UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSHUA HOWARD,

                Plaintiff,

        v.                                    Case No. 05-C-0635

BYRON TERRY and
T.J. MacCORMICK,

                Defendants.

**ORDER RE: PLAINTIFF'S MOTION FOR SANCTIONS AND REIMBURSEMENT OF COSTS AND PLAINTIFF'S REQUEST TO FILE AN AMENDED COMPLAINT**

    Plaintiff, Joshua Howard, a Wisconsin state prisoner, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 and is proceeding *in forma pauperis* on Eighth Amendment excessive force and failure to act claims, a First Amendment retaliation claim, and a state law claim for intentional infliction of emotional distress. This matter comes before the court on the plaintiff's motion for sanctions and reimbursement of costs and the plaintiff's request to file an amended complaint.

**1.    Motion for Sanctions and Reimbursement of Costs**

    On January 24, 2007, the plaintiff filed a motion for sanctions and reimbursement of costs, requesting: (1) reimbursement for the costs he incurred in filing his July 19, 2006, motion to compel; (2) that the defendants be sanctioned for failing to respond to his discovery requests; and (3)

reimbursement for the costs he incurred in filing the motion for sanctions. The court will address each request in turn.

First, the plaintiff asks for reimbursement of costs based on the court's October 23, 2006, order granting in part and denying in part his July 19, 2006, motion to compel discovery. Specifically, the court granted the plaintiff's motion to compel as to Request Number 15 of his April 4, 2006, discovery request.[1] In an order of December 19, 2006, the plaintiff's initial motion for reimbursement of costs was denied because he failed to show that the requested amount ($185.00) was reasonably incurred under Federal Rule of Civil Procedure 37(a)(4). The plaintiff was advised that he could renew such motion if he could cure the deficiencies therein by explaining with particularity the expenses he incurred and by providing documentation of such.

The plaintiff subsequently re-filed his motion supported by an itemized list of expenses and an affidavit explaining how he arrived at this amount. In sum, the plaintiff asks to be reimbursed $185.00 based on the following calculations: (1) $11.25 for copies (75 copies at a rate of $0.15 per copy); (2) $21.75 in postage; and (3) $152.00 for the time he spent preparing the motion to compel (38 hours at a rate of $4.00 per hour).

> A party which successfully brings a motion to compel discovery may be awarded,
>
> the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

---

[1] REQUEST NO. 15: The internal logs for the dates of June 28, 29, and September 3, 4, 5, of 2004, and any other documentation that may be required by staff. The plaintiff's motion to compel was denied as to the remaining requests made in his April 4, 2006, and May 16, 2006, discovery demands. (*See* Order of Oct. 23, 2007, at 4).

Fed. R. Civ. P. 37(a)(4)(A). Under Rule 37(a)(4), the "winner is entitled to fees unless the opponent establishes that his position was 'substantially justified.'" *Rickels v. City of South Bend, Ind.*, 33 F.3d 785, 787 (7th Cir. 1994). Rule 37(a)(4) further provides that reasonable expenses shall be paid only after affording the party whose conduct necessitated the motion an opportunity to be heard.

The defendants have not responded to the plaintiff's motion. From their failure to respond, the court infers that the defendants do not object to paying the plaintiff $185.00. However, the court's inquiry does not end here. *See* Fed.R.Civ.P. 37(a)(4). Rather, the court must now determine whether the plaintiff's reimbursement requests are reasonable.

In the present case, the court finds that the amounts requested for photocopies and postage are necessary and reasonably incurred. *See Harkins v. Riverboat Servs.*, 286 F. Supp. 2d 976, 982 (N.D. Ill. 2003)(copy fees between $0.10 and $0.20 per page are reasonable for purposes of taxing costs pursuant to 28 U.S.C. § 1920); *Eli Lilly & Co. v. Zenith Goldline Pharms.*, 264 F. Supp. 2d 753, 779 (S.D. Ind. 2003)(prevailing party entitled to reasonably necessary postage expenses under 28 U.S.C. § 1920). However, the plaintiff's request to be compensated for "the hours spent researching the applicable rules and federal caselaw and drafting the documents," (Pl.'s Jan. 22, 2007, Motion at 1), must be denied because the court is not authorized to reimburse the plaintiff for the time he spent preparing the motion to compel. *See Redding v. Fairman*, 717 F.2d 1105, 1120 (7th Cir. 1983)(citing *Cofield v. Atlanta*, 648 F.2d 986 (5th Cir. 1981) and *Lovell v. Snow*, 637 F.2d 170 (1st Cir. 1981))(a non-attorney *pro se* plaintiff is not entitled to fees covering the time he expended on the case). As the Court of Appeals for the Fifth Circuit explained in *Cofield*, 648 F.2d at 987,

3

The Civil Rights Fee Awards Act of 1976, 42 U.S.C. § 1988, permits a court in its discretion to allow the prevailing party a reasonable attorney's fee as part of the costs of an action to enforce a provision of, inter alia, section 1983. [Plaintiff] is not an attorney, yet undoubtedly he devoted considerable time and effort in the pursuit of this claim. We do not suggest that he was an unworthy advocate; to be sure, he has prevailed. Nor do we imply that it is improper for a person to serve as his own advocate. We feel strongly, however, that the intent of Congress in enacting section 1988 would be seriously undermined if we allowed *pro se* litigants to recover legal fees under that section.

Similarly, the Seventh Circuit has held that a *pro se* plaintiff may not recoup expenses for time spent prosecuting an action under Freedom of Information Act, 5 U.S.C. § 552, because:

We have no doubt that Blue Cross/Blue Shield would balk at a request for doctor fees from a person who removed his own appendix, or more realistically, a request for dental fees from someone who extracted his own tooth. No one would be entitled to reimbursement for therapist fees for attempts at self-improvement or for finding solutions to one's own problems. Rebuilding and repairing one's own car after an accident might be spiritually rewarding, however, we doubt very much if one's insurance company would honor a demand for mechanic fees. Myriad examples leap to mind that need not be repeated here. Suffice it to say that, although a pro se litigant often performs exactly the same functions as a lawyer might perform in representing a client, without a degree and admission to the bar a pro se litigant is not entitled to collect attorney fees. We do not mean to imply that pro se litigants do not further the purposes of FOIA, we merely conclude that, had Congress intended for pro se litigants to be entitled to some type of attorney fee award, they would have made that clear in the statute. In addition, a pro se litigant who has substantially prevailed is entitled to litigation costs reasonably incurred. A pro se litigant is made whole thereby, serving as a small incentive to pursue litigation if no attorney may be found to represent the litigant.

*DeBold v. Stimson*, 735 F.2d 1037, 1042-43 (7th Cir. 1984)(citing *Crooker v. United States Department of Justice*, 632 F.2d 916 (1st Cir. 1980)). Therefore, the plaintiff's request for compensation for the time he spent preparing the motion to compel will be denied.

The plaintiff further requests that the defendants be sanctioned under Federal Rule of Civil Procedure 37(b)(2). Although the grounds for his request are somewhat unclear, it appears that the plaintiff believes that sanctions are in order because: (1) the information sought in his motion to

4

compel is important; (2) the defendants have a record of failing to cooperate; (3) the defendants did not produce the information sought until issuance of the court order; and (4) sanctions would further the public policy concern of not clogging up the judicial system. (Pl.'s Jan. 22, 2007, Motion at 2-3). Rule 37(b)(2) authorizes the court in which an action is pending to impose sanctions against a party who fails to obey a court order regarding discovery. However, the court has not issued a discovery order with which the defendants have failed to comply. Moreover, the case the plaintiff cites in support of his request, *Creative Res. Group of N.J., Inc., v Creative Res. Group, Inc.*, 212 F.R.D. 94 (E.D. N.Y. 2002), is distinguishable because the defendants in that action were only sanctioned after they failed to comply with several discovery orders.[2] For these reasons, the plaintiff's motion for Rule 37 sanctions must be denied.

Finally, the plaintiff seeks to collect $115.00 for the photocopying, postage and time spent preparing his motion for sanctions. As discussed, the plaintiff's motion for sanctions has been denied. Thus, the plaintiff's motion for costs associated with bringing the motion for sanctions will also be denied.

**2.    Request to Amend the Complaint**

The plaintiff seeks to amend the original complaint to include two new causes of action (equal protection and due process) and to add 16 new defendants (14 of which were originally identified as John Doe defendants). Rule 15(a) of the Federal Rules of Civil Procedure states that leave to file an amended complaint "shall be freely given when justice so requires." The Supreme Court has explained the meaning of "freely given" as used in Rule 15(a) by stating:

---

[2] The plaintiff also relies on *Litten Systems, Inc. v. American Tel. and Tel. Co.*, 92 F.R.D. 574 (S.D.N.Y. 1981), in support of his motion for sanctions. However, the court can find no record of such case.

> In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of a movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. - the leave sought should, as the rules require be freely given.

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

In the present case, no trial date has been set and there is no indication that the plaintiff is guilty of acting in bad faith or with a dilatory motive. Moreover, a plaintiff should be permitted to amend a complaint to identify the John Doe defendants named in the original complaint. *See Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996).

On the other hand, a plaintiff will not be allowed to amend his complaint if such amendments would be futile. *Moore v. Indiana*, 999 F.2d 1125, 1128 (7th Cir. 1993). For example, if the claims in the amended complaint could not withstand a motion to dismiss for failure to state a claim upon which relief can be granted, the court will not grant leave to file the amended complaint. *Id*. Therefore, the amended complaint must next be screened pursuant to 28 U.S.C. § 1915A(a).

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual

6

contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

To state a claim for relief under 42 U.S.C. § 1983, plaintiffs must allege: 1) that he was deprived of a right secured by the Constitution or laws of the United States, and 2) that the deprivation was visited upon him by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, however inartfully pleaded, a liberal construction. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." This statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley*, 355 U.S. at 47); *see also Thomson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004) (no heightened pleading requirement for *pro se* prisoner civil rights complaint). Of course, if a complaint pleads facts that

7

show that a plaintiff does not have a claim, the complaint should be dismissed "without further ado." *Thomson*, 362 F.3d at 970.

The plaintiff contends that on July 28, 2004, after appearing in court in Milwaukee County, defendant Deputy Byron Terry used excessive force against him while defendant Deputy T.J. MacCormick, "in a display of deliberate indifference," did not say anything or attempt to stop Deputy Terry. (Amended Complaint [Amend. Compl.] at 3 ¶ 6). According to the plaintiff,

> After his court appearance Milwaukee County Sheriff's (sic) Deputy Byron Terry and Milwaukee County Sheriff's Deputy T.J. MacCormick handcuffed the plaintiff to the front of a belly chain, which was connected to three other inmates, who were lined up behind the plaintiff. Before leaving the courtroom bullpen area, Deputy Terry instructed the inmates not to talk in the courthouse hallways.
>
> Upon exiting the courthouse hallway and entering the stairwell platform the plaintiff asked one of the other inmates a question. At this time Deputy MacCormick was directly in front of the plaintiff while Deputy Terry was near the rear of the group. In response to the plaintiff speaking, Deputy Terry walked up to the plaintiff's left side and proceeded to grab and squeeze the plaintiff's left bicep and slammed the plaintiff's left shoulder against the wall, stating, "what part of don't talk do you not understand?"
>
> As a result the plaintiff suffered extreme pain and physical injury to his arm, shoulder, and back, mental and emotional pain and suffering including insomnia, heightened anxiety attacks and depression. Also as a result of Defendant Terry's actions the plaintiff was subjected to constant ridicule, taunting, disrespectful and threatening comments, and repeated theft of property and food items from other inmates causing the plaintiff extreme and disabling emotional distress resulting in an inability to function in close relationships.

(Amend. Compl. at 4 ¶¶ 3-5.) Following the incident, the plaintiff filed a grievance with Deputy Pamela Moats. Then, at approximately 6:00 p.m, Nurse Myra Lathrop gave the plaintiff medication to help ease the pain and deputy Moats took several photographs of the plaintiff's injuries.

The next day, the plaintiff was called into an attorney visitation cubicle on the fourth floor, where Sergeant James A. Sajdowitz interviewed him and took additional photos of his injuries.

Sajdowitz then conducted a phone interview with Charles Royster, another inmate who was chained to the plaintiff at the time of the July 28, 2004, incident. Inmate Royster indicated that defendant Terry had put the plaintiff "into the wall." (Amend. Compl. at 4 ¶ 10).

Defendant Captain Mark Strachota also conducted an investigation of the alleged assault. On August 16, 2004, Captain Strachota interviewed Inmate Royster. At that time, Royster stated that defendant Terry put his hand on the plaintiff, pushed him back a little and told him to be quiet. Royster told defendant Strachota that defendant Terry's actions were insignificant.

On September 3, 2004, the plaintiff filed a grievance, complaining that he had not been contacted about the result of the investigation into his assault. The plaintiff did not receive any response to his grievance.

On September 4, 2004, cell searches were conducted on Unit 4A, where defendant Brian Thelaner was working. The plaintiff was outside of his cell during the search. At one point, defendants Carol Curfman, Todd Dickau, Jeffrey Demeyers, Aaron Hiene, Ramon Agor, Dean Zirzow, Brandon Rios, Andrew Wendt, Christopher Kontowicz, Jason Vanderwerff, Eric Sturino and Bradley Summers personally entered the plaintiff's cell to conduct a shakedown. The plaintiff could hear his toilet repeatedly being flushed. When he was allowed to enter his cell, the plaintiff found his legal paperwork thrown everywhere and his toothbrush in the toilet. He also discovered that the motions he planned on filing at his court date on September 7, 2004, were missing. The plaintiff was informed by defendant Thelaner that he was being given a 23-hour room confinement because matches were found in his cell. However, the plaintiff denies that any matches were found. On September 5, 2005, the plaintiff filed a grievance due to his cell search and related conduct, but received no response.

9

On January 15, 2005, the plaintiff filed an open records request to defendant Milwaukee County Sheriff David Clarke, requesting to see all of the documents that were generated from the grievances the plaintiff filed on July 28, September 3 and September 4, 2004. The plaintiff received a letter from Sheriff Clarke's office on February 1, 2005, stating that there was no record of the plaintiff having filed any grievances.

On February 10, 2005, the plaintiff sent defendant Clarke copies of the previous grievances that were not on record and also filed a new grievance due to the destruction of the prior grievances and/or the failure to log them on to the record. Defendant Clarke's office responded that the plaintiff could purchase copies of the six photographs taken on July 28, 2004, but did not respond to the new grievance or the open records request.

On May 12, 2006, the plaintiff received the investigative reports he requested. On May 25, 2006, the plaintiff filed a grievance due to defendant Strachota's re-interview of a witness that resulted in that witness changing his position from stating that the plaintiff had "been put into a wall" to a completely appropriate, non-forceful tap on the shoulder. (Amend. Compl. at 6 ¶ 21).

The plaintiff charges the defendants with violating his rights under the First, Eighth and Fourteenth Amendments and he seeks to pursue a state law claim for intentional infliction of emotional distress. The plaintiff further claims that defendants Clarke and the Milwaukee County Sheriff's Department maintain unconstitutional policies of: (1) cutting the number of deputies that are assigned to the Milwaukee County Jail and the Milwaukee County Courthouse; (2) not properly logging and even destroying grievances that inmates file against deputies; (3) covering up allegations of misconduct; and (4) retaliating against prisoners who file complaints against the Milwaukee County Sheriff's Department or its personnel.

10

### A. Eighth Amendment Claims[3]

The plaintiff claims that defendant Terry assaulted him and that defendant MacCormick failed to act to stop defendant Terry's behavior. The plaintiff also asserts that defendant Clarke had specific knowledge of defendant Terry's history of violence. The Eighth Amendment's Cruel and Unusual Punishments Clause prohibits "unnecessary and wanton infliction of pain" on prisoners. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). In cases involving the use of excessive force, the question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. Factors in determining whether the use of force was wanton and unnecessary include "the need for an application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). It is well-established that "[a]n official satisfies that personal responsibility requirement of § 1983 if she acts or fails to act with a deliberate or reckless disregard of the plaintiff's constitutional rights." *Fillmore v. Page*, 358 F.3d 496, 506 (7th Cir. 2004) (quoting *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982). Accordingly, the plaintiff may proceed on an Eighth Amendment excessive force claim against defendant Terry and a failure to act claim against defendants MacCormick and Clarke.

---

[3] It appears that events alleged in the complaint occurred while the plaintiff was a pretrial detainee. The distinction between pretrial detainee and prisoner status "is immaterial since the legal standard for § 1983 claim is the same under either the Cruel and Unusual Punishment Clause of the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment." *Whiting v. Marathon Co. Sheriff's Dep't,* 382 F.3d 700 (7th Cir. 2004). Thus, the court will analyze the plaintiff's excessive force claims under the Eighth Amendment.

11

### B. Intentional Infliction of Emotional Distress Claims

The plaintiff charges defendant Terry with intentional infliction of emotional distress. A plaintiff states a claim for intentional infliction of emotional distress by pleading (1) the defendant intended to cause him emotional distress by his conduct; (2) the conduct was extreme and outrageous; (3) the conduct was a cause-in-fact of the plaintiff's emotional distress; and (4) the plaintiff suffered an extreme disabling response to the defendant's conduct. *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 694-95 (1978). At this stage, the plaintiff may proceed on a state law claim for intentional infliction of emotional distress. *See* 28 U.S.C. § 1367(a).

### C. First Amendment Claims

The plaintiff alleges that defendants Thelaner, Curfman, Dickau, Demeyers, Heine, Agor, Zirzow, Rios, Wendt, Kontowicz, Vanderwerff, Sturino and Summers retaliated against him for filing grievances. To state a claim for retaliation, a prisoner need only allege that he engaged in conduct protected by the First Amendment, and that defendants retaliated against him based on that conduct. *See Walker v. Thompson*, 288 F.3d 1005, 1008-09 (7th Cir.2002). The plaintiff's allegations that the defendants retaliated against him for filing inmate grievances satisfy this standard and therefore he may proceed on a retaliation claim against them.

### D. Fourteenth Amendment Claims

The plaintiff alleges that defendant Strachota violated his due process rights when he falsified inmate Royster's statement. To establish a procedural due process violation, a prisoner must demonstrate that the state deprived him of a liberty or property interest created either by state law or the Due Process Clause itself. *See Sandin v. Connor*, 515 U.S. 472, 483-84 (1995). A number of cases in this circuit consider "any nontrivial punishment of a person not yet convicted a sufficient

12

deprivation of liberty to entitle him to due process of law." *Holly v. Woolfolk*, 415 F.3d 678, 679-80 (7th Cir. 2005). In the present case, however, the plaintiff does not indicate that he was punished as a result of inmate Royster's false statement. Thus, the plaintiff may not proceed on this claim.

The plaintiff also alleges that defendants Terry, Strachota and Clark violated his equal protection rights when they covered up the assault instead of treating him as a victim and prosecuting the crime. To comply with equal protection, governmental entities are generally required to treat all similarly situated persons in a similar manner. *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). "To state an equal protection claim, a § 1983 plaintiff must allege that a state actor purposefully discriminated against him because of his identification with a particular (presumably historically disadvantaged) group." *Sherwin Manor Nursing Center, Inc. v. McAuliffe*, 37 F.3d 1216, 1220 (7th Cir 1994). In the present case, the plaintiff has not indicated that he was discriminated against based on his membership in a particular group. Therefore, the plaintiff may not proceed on a traditional equal protection claim. However, inasmuch as the complaint suggests that the defendants sought to deprive the plaintiff of the equal protection of the law "for reasons of a personal nature unrelated to the duties of [their] position," *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000), he has stated a "class of one" equal protection claim. See *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)("class of one" claims under § 1983 require the plaintiff to present evidence that "the cause of the differential treatment of which the plaintiff complains was a totally illegitimate animus toward the plaintiff by the defendants.").

### E. Policy Claims

The plaintiff avers that defendants Clarke and Milwaukee County employ various unconstitutional policies. Although counties are "persons" for purposes of § 1983, liability against

13

counties nevertheless may not arise vicariously; counties cannot be held liable under § 1983 on a *respondeat superior* basis. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-92 (1978). Instead, counties are liable only for acts for which the entity itself is responsible, meaning acts the entity has embraced as policy or custom. *Id.* at 690-91, 694. Unconstitutional policies or customs can take three forms:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority.

*Palmer v. Marion County*, 327 F.3d 588, 594-95 (7th Cir. 2003) (citations omitted). At this stage of the proceedings, it is unclear whether the challenged policies fall into one of these categories. Inasmuch as the court has been instructed to construe such doubts in the plaintiff's favor, *see Jenkins*, 395 U.S. at 421, he may proceed on his policy claims against defendants Clarke and Milwaukee County.

The plaintiff also alleges that defendant Milwaukee County was aware of defendant Terry's history of violence and violated the plaintiff's equal protection rights. As discussed above, counties are liable only for acts for which the entity itself is responsible, meaning acts the entity has embraced as policy or custom. *See Monell*, 436 U.S. at 694. The facts as presented in the amended complaint do not give rise to an inference that Milwaukee County itself was involved in these alleged constitutional violations. Thus, the plaintiff may not proceed on such claims against Milwaukee County.

In sum, the plaintiff's request to amend the complaint will be granted in part and denied in part. Specifically, the plaintiff may proceed on First Amendment retaliation, Eighth Amendment

excessive force, intentional infliction of emotional distress and Fourteenth Amendment equal protection claims as stated herein. The plaintiff has failed to state a due process claim against any defendant and he may not proceed on his excessive force and equal protection claims against defendant Milwaukee County.

As a final matter, the plaintiff is advised that the amended complaint supercedes the prior complaint. *See Duda v. Board of Ed. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056 (7th Cir. 1998). This means that any matters not set forth in the amended complaint are withdrawn as the amended complaint becomes the operative complaint in this action. *Id*.

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's motion for sanctions and reimbursement of costs (Doc. # 42) be and hereby is **GRANTED IN PART AND DENIED IN PART**;

**IT IS FURTHER ORDERED** that the defendants shall pay the plaintiff $33.00 as reimbursement for the costs he incurred in filing his July 19, 2006, motion to compel;

**IT IS FURTHER ORDERED** that the plaintiff's request to amend the complaint (Doc. # 44) be and hereby is **GRANTED IN PART AND DENIED IN PART**;

**IT IS FURTHER ORDERED** that Brian Thelaner, Carol Curfman, Todd Dickau, Jeffrey Demeyers, Aaron Heine, Ramon Agor, Dean Zirzow, Brandon Rios, Andrew Wendt, Christopher Kontowicz, Jason Vanderwerff, Eric Sturino, Bradley Summers, Mark Strachota, David Clarke and Milwaukee County be added as defendants in this action;

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint, the summons, and this order upon the defendants pursuant to Federal Rule of Civil Procedure 4. The plaintiff is advised that Congress requires the U.S. Marshals Service to charge for

15

making or attempting such service. 28 U.S.C. § 1921(a). The current fee for waiver-of-service packages is $8 per item. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service;

**IT IS FURTHER ORDERED** that the defendants shall file a responsive pleading to the complaint;

**IT IS FURTHER ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

**SO ORDERED** this 25th day of April, 2007, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge

16