# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JOSHUA HOWARD,

            Plaintiff,

      v.                              Case No. 05-C-0635

BYRON TERRY, T.J. MACCORMICK[1], DAVID CLARKE,
MILWAUKEE COUNTY, BRIAN THELANER, CAROL CURFMAN,
TODD DICKAU, JEFFREY DEMEYERS, AARON HEINE,
RAMON AGOR, DEAN ZIRZOW, BRANDON S. RIOS,
ANDREW WENDT, CHRISTOPHER KONTOWICZ,
JASON VANDERWERFF, ERIC STURINO, BRADLEY SUMMERS,
and MARK STRACHOTA,

            Defendants.

---

## DECISION AND ORDER

---

The plaintiff, Joshua Howard, is proceeding *in forma pauperis* in this *pro se* civil rights action predicated on 42 U.S.C. § 1983. In a decision and order dated April 25, 2007, the plaintiff was allowed to proceed on the following claims: (1) an Eighth Amendment excessive force claim against defendant Terry; (2) Eighth Amendment failure to act claims against defendants McCormack and Clarke; (3) a state law intentional infliction of emotional distress claim against defendant Terry; (4) First Amendment retaliation claims against defendants Brian Thelaner, Carol Curfman, Todd Dickau, Jeffrey Demeyers, Aaron Heine, Ramon Agor, Dean Zirzow, Brandon S. Rios, Andrew Wendt, Christopher Kontowicz, Jason Vanderwerff, Eric Sturino and Bradley Summers; (5) a "class of one" equal protection claim against defendants Terry, Strachota, and Clarke; and (6) policy claims against

---

[1] Defendant T. J. MacCormick filed an affidavit in support of his motion for summary judgment that indicates that his full name, correctly spelled, is "Thomas J. McCormack." As such, the court will spell defendant McCormack's named correctly in the rest of this decision and order.

defendants Clarke and Milwaukee County. The defendants have filed a motion for summary judgment, which is now before the court.

## I. BACKGROUND[2]

The United States Court of Appeal for the Seventh Circuit has noted that, in some cases, a person comparing a plaintiff's version of events with that of a defendant "would be forgiven for thinking that each was recalling an entirely different event." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009).

> The standard of review governing summary judgment, however, resolves at least one question: we must accept all facts and reasonable inferences in the light most favorable to the non-moving party - here, the plaintiffs. We do not judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact.

*Id.* (Internal citations omitted.) Accordingly, the court will present the plaintiff's version of the facts.

On July 28, 2004, the plaintiff was incarcerated at the Milwaukee County Jail and was scheduled to appear in front of Judge Sankovitz. As the plaintiff was leaving the holding cell in the court staging area of the jail, en route to the courtroom, an unidentified Milwaukee County Sheriff's Deputy who was escorting him said, "so you're the asshole who is representing himself." (Affidavit of Joshua Howard, ¶1, hereafter "Howard Aff, ¶ __"). After the plaintiff's court appearance, defendant Milwaukee County Sheriff's Deputy Byron Terry ("Terry") handcuffed the plaintiff to the front of a belly chain that was connected to three other inmates who were lined up behind him. Terry asked the plaintiff if the handcuffs were too tight and then double locked them so that they could not tighten during transport. Terry instructed the inmates not to talk in the courthouse hallways.

---

[2] Facts are taken from each parties' proposed findings of fact, as well as the underlying affidavits and exhibits. The plaintiff's exhibits are not authenticated by or attached to an affidavit. *See Scott v. Edinburg*, 346 F.3d 752, 760 n.7 (7th Cir. 2003) (quoting 10A Charles Alan Wright et al., *Federal Practice & Procedure* § 2722, at 379-80 & 382-84 (1998)). However, the defendants waived any objection to the exhibits by failing to challenge their use. *See Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1267 (7th Cir. 1986).

2

Terry and defendant Thomas J. McCormack ("McCormack"), another Milwaukee County Sheriff's Deputy, escorted the inmates to the elevator. McCormack was in front of the group, and Terry was in the rear. Once the group exited the courthouse hallway and entered the stairwell platform, the plaintiff asked one of the other inmates a question. Terry then walked up to the plaintiff's left side, and grabbed and squeezed the plaintiff's left bicep. Terry slammed the plaintiff's left shoulder against the wall, stating, "what part of don't talk do you not understand?" (Howard Aff., ¶8). McCormack witnessed Terry's actions, but he did not say anything or attempt to stop Terry.

At no time did the plaintiff complain about his handcuffs being too tight; nor did Terry check the plaintiff's handcuffs after they left the courtroom bullpen area. Upon exiting the court annex and entering court staging, the plaintiff told Terry that he cannot just discipline inmates as if they were his children. Terry replied, "You're a piece of shit to me, look at your position and then look at mine." (Howard Aff., ¶12). Once disconnected from the belly chain, the plaintiff was immediately separated from the other three inmates and did not have any further contact with them.

The plaintiff submitted a grievance regarding the assault to Deputy Pamela Moats at 4:00 p.m. on July 28, 2004, who properly logged the grievance.[3] (Plaintiff's Exhibit F). At approximately 6:00 p.m., Deputy Moats called the plaintiff out into the hallway, where R.N. Myra Lathrop was waiting with a medication cart so that she could take photographs of the injuries. Nurse Lathrop gave the plaintiff medication to help ease the pain, and Deputy Moats had the plaintiff partially remove his shirt in order to look at the bruises. Deputy Moats then took five photographs of the bruises that were

---

[3] Although this grievance was logged, the plaintiff does not believe it was properly filed thereafter. On January 15, 2005, the plaintiff filed an open records request with Milwaukee County Sheriff David Clarke, asking to see all of the documents that were generated due to the grievances he filed on July 28, 2004, September 3, 2004, and September 5, 2004. The response indicated that there was no record of any grievances filed by the plaintiff in 2004.

on the plaintiff's arm and shoulder. Deputy Moats was present during all conversations between the plaintiff and Nurse Lathrop.

While Deputy Moats was taking the photographs, Nurse Lathrop drew a circle around a bruise on the plaintiff's arm. She commented that it looked old and asked the plaintiff if it could have been from playing basketball or something. The plaintiff responded that the bruise was not old, and that he would have noticed if he had injured himself previously.

On July 28, 2004, Captain Jonas wrote an e-mail message to two sergeants that states, in part:

> I have a complaint regarding Deputy Byron Terry. An inmate Joshua Howard m/w 8/20/77 alledged [sic] that he was slammed against the wall and grabbed by his left bicep while being transported from Judge Sankovitz's courtroom, by Deputy Terry.
>
> I will forward the grievance to your office. The inmate was scheduled to go back to Waupun on 7/29, he will stay in the jail for an extra day in case you want to investigate or have someone ask questions. There are some physical marks on the subject, per the medical staff one is an older bruise, but there are also some red marks on his arm. Currently it cannot be proved when or where he may have received these marks.
>
> Get back to me as to if you need the inmate to remain in CJF or be able to be shipped to Waupun.

(Plaintiff's Exhibit U).

On July 29, 2004, Sgt. James Sajdowitz interviewed witness Patricia Harms, one of the other inmates who was transported with the plaintiff. Harms told the sergeant that the plaintiff was trying to talk to her when Deputy Terry pushed him into the wall and "punked him out in front of everyone."[4] (Plaintiff's Exhibit P). Sgt. Sajdowitz then interviewed the plaintiff in an attorney visitation cubicle on the fourth floor of the jail. The plaintiff requested that additional photographs be taken of his bruises, and Sgt. Sajdowitz took two photographs of the plaintiff's visible injuries.

---

[4] The information regarding Sgt. Sajdowitz's investigation is derived from his August 9, 2004 memorandum to Internal Affairs, entitled "Investigation Authorization Request." (Plaintiff's Exhibit P).

4

On August 5, 2004, Sgt. Sajdowitz talked via telephone with inmate Charles Royster, one of the other inmates who was transported with the plaintiff. While Sgt. Sajdowitz was "gathering background information from Mr. Royster he spontaneously stated 'Is this about the black deputy putting that white guy into the wall.' Mr. Royster further stated it was a result of the white guy talking through the hallways." (Plaintiff's Exhibit P).

Also included in the memorandum was a report of Sgt. Sajdowitz's July 30, 2004, interview with Deputy Lisa Biro-Bauer, who was asked if she overheard any conversations between the plaintiff and Terry while in court staging. "She stated that Mr. Howard said to Deputy Terry 'You have Deputy and Father mixed up'. Deputy Terry responds 'No, I don't because you would never be a son of mine'." (Plaintiff's Exhibit P).

Defendant Captain Mark Strachota subsequently conducted an investigation into the plaintiff's complaint against Terry, Internal Affairs Case 04-238. Captain Strachota prepared an Investigative Summary that describes his interviews with McCormack, Terry, inmate Charles Royster, inmate Donnell Reed, Deputy Biro-Bauer, Nurse Lathrop, and inmate Patricia Harms. (Plaintiff's Exhibit V). Captain Strachota concluded that, based on his investigation, "it appears the allegations against Deputy Sheriff Byron D. Terry are 'Unfounded'." (Plaintiff's Exhibit V).

In early September 2004, the plaintiff returned to the Milwaukee County Jail. On September 3, 2004, the plaintiff filed a grievance with defendant Brian Thelaner, complaining that he had not been contacted about the result of the investigation into his assault and requesting to speak with someone regarding his prior grievance. Thelaner did not record the plaintiff's grievance in the log; nor was the grievance found in response to the plaintiff's January 2005 open records request.

On September 4, 2004, while Thelaner was working, defendants Sgt. Carol Curfman and Sgt. Todd Dickau entered the plaintiff's sub pod with defendants Deputies Jeffrey Demeyers, Aaron

Heine, Ramon Agor, Dean Zirzow, Brandon Rios, Andrew Wendt, Christopher Kontowicz, Jason Vanderwerff, Eric Sturino, and Bradley Summers, to conduct a "shakedown." (Plaintiff's Exhibit H). "This shakedown was due to inmate Joel Rhodes (m/b dob 03/09/76) possessing 10 ballpoint pens which he received from his attorney during his professional visits." *Id.* During the shakedown, deputies searched all twenty-eight cells in the sub pod. The plaintiff was one of four inmates found in possession of contraband. Deputies found matches in the plaintiff's possession and, "After conferring with Sgt. Curfman about Howard being a state inmate, and the length of stay at our facility is an average of 3 days, we agreed on locking Howard in for 23 hours." *Id.*

The plaintiff was asked to step outside his cell, where a deputy did a pat-down search, and then told the plaintiff to stand facing the wall. Although the plaintiff's cell was not the last one to be searched, it was still being searched when all of the other cell searches had been completed. At some point during the cell search, defendants Dickau, Demeyers, Heine, Agor, Zirzow, Rios, Wendt, Kontowicz, Vanderwerff, Sturino, and Summers personally entered the plaintiff's cell, and the plaintiff could hear his toilet repeatedly being flushed. When the search was over, the plaintiff asked the deputies if there were any problems, and they responded "No" and exited the cell with nothing in their hands. When the plaintiff entered his cell, he found his property in disarray and his toothbrush in the toilet. He then spoke with Thelaner over the intercom and was informed that he was being given a 23-hour room confinement because matches were found in his cell. The plaintiff denied that any matches were found in his cell and asked to see the evidence. Thelaner responded that the other deputies had taken the matches. The plaintiff made several requests to speak to the sergeant, but Thelaner replied that the sergeant "was too busy and if you don't like it, file another grievance." (Plaintiff's Affidavit, ¶¶ 25, 26). The plaintiff avers that there were never any matches

in his cell. *Id.* at ¶26. None of the defendants who were working on the pod or involved in the cell search remember finding matches in the plaintiff's cell or witnessing someone find any matches.

The plaintiff submits that placing his toothbrush in the toilet, fabricating a rule violation, and giving him a 23-hour room confinement were all done in retaliation for the plaintiff filing grievances on July 28, 2004 and September 3, 2004. The plaintiff filed another grievance on September 5, 2004 about the above conduct, but he did not receive a response. The plaintiff gave the September 5, 2004 grievance to Deputy Martin, but it was not logged; nor was it discovered in response to the plaintiff's subsequent open records request.

On October 21, 2004, the plaintiff filed a notice of claim with the Milwaukee County Corporation Counsel detailing the assault and subsequent retaliation. (Plaintiff's Exhibit Q).

## II. SUMMARY JUDGMENT STANDARD

A district court must grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note to 1963 amendment). "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it

believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing a properly supported summary judgment motion "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). To state it differently, "[a] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (quoting *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997)).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citing *Anderson*, 477 U.S. at 255). "'In the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences.'" *Draghi v. County of Cook*, 184 F.3d 689, 691 (7th Cir. 1999) (quoting *Smith*, 129 F.3d at 425). "The evidence must create more than 'some metaphysical doubt as to the material facts.'" *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) (quoting *Johnson v. Univ. of Wis.-Eau Claire*, 70 F.3d 469, 477 (7th Cir. 1995)). "A mere scintilla of evidence in support of the nonmovant's position is insufficient." *Id.* (citing *Anderson*, 477 U.S. at 252).

Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

8

# III. DISCUSSION

## A.    Eighth Amendment Claims

The defendants rely on their own affidavits and submit that there is no evidence that either Terry or McCormack acted with a deliberate or reckless disregard for the plaintiff's constitutional rights**.**  The plaintiff argues that because he was restrained, any force used against him for talking would have been excessive.  He also contends there is a genuine issue of material fact regarding: (1) whether Terry assaulted the plaintiff; and (2) whether McCormack failed to act to stop Terry.  In their reply brief, the defendants refuse to acknowledge the plaintiff's affidavit and, contrary to the appropriate standard at summary judgment, continue to argue the version of facts presented in their own affidavits.

### 1.    Excessive Force Claim Against Deputy Terry

An officer's use of physical force against an inmate may given rise to an Eighth Amendment claim.  *Hudson v. McMillian*, 503 U.S. 1, 4 (1992); *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  In evaluating whether an official used excessive force, the court is to consider factors such as "the need for an application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'"  *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

> But not every malevolent touch by a security officer implicates the Constitution.  The use of *de minimis* force, so long as it is not of a sort repugnant to the conscience of mankind is not of Eighth Amendment concern.  If the force were more than *de minimis*, we must consider whether it was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

*Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009) (internal quotations and citations omitted).

In order to prevail, the plaintiff must "prove not only that the assault actually occurred but also that it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to

9

maintain or restore discipline.'" *Wilkins v. Gaddy*, __ U.S. __, 130 S. Ct. 1175 (2010). The malicious and sadistic use of force can occur in two situations. The first is when prison officials in the particular case are not justified in using force, in other words, that the use of force was not justified by the situation. The second is when, even though the decision to use force was justifiable, force used, in the circumstances, is badly out of proportion to the need.

The defendants suggest, without explicitly denying, that Terry did not use any force against the plaintiff. Whether the defendants simply omitted the details from their affidavits or meant to implicitly deny that Terry touched the plaintiff, they are steadfast in their insistence that there is no evidence that Terry used excessive force or that the plaintiff was deprived of his rights. Even in the face of affidavits from the plaintiff and Patricia Harms, one of the other inmates connected to the belly chain, the defendants do not concede that Terry touched the plaintiff. In their reply brief, the defendants argue both that Harms' affidavit "is belied by all other evidence" and that her allegations, if true, do not rise to the level of excessive force. (Defendants' Reply Brief, p. 2).

The defendants do not acknowledge the plaintiff's affidavit and seem to suggest that it is not evidence. However, an affidavit is evidence. *Lax v. City of South Bend*, 449 F.3d 773 (7th Cir. 2006) (In an excessive force case, district court improperly granted summary judgment in favor of defendants where plaintiff's affidavit conflicted with defendants' affidavits. Plaintiff's version of the incident as set forth in his affidavit presented a genuine issue of material fact.). The plaintiff's version of the incident not only presents a genuine issue of material fact regarding Terry's actions, it is also the version the court must consider at summary judgment. *See Anderson*, 477 U.S. at 255.

In *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000), the United States Court of Appeals

for the Seventh Circuit affirmed the dismissal at screening of a plaintiff's complaint that an officer shoved the plaintiff into a door frame.[5]  The Seventh Circuit found the following:

> Officer Smith's simple act of shoving Mr. DeWalt qualifies as the kind of de minimis use of force that does not constitute cruel and unusual punishment.  *Compare Lunsford v. Bennett*, 17 F.3d 1574, 1582 (7th Cir. 1994) (pouring a bucket of water on prisoner and causing bucket to hit him in the head characterized as de minimis), *with Thomas v. Stalter*, 20 F.3d 298, 301-02 (7th Cir. 1994) (punching a prisoner with a closed fist, while held down by other officers, qualified as more than de minimis).  The shove was a single and isolated act, unaccompanied by further uses of force.  Moreover, the bruising Mr. DeWalt allegedly suffered does not appear to have been particularly serious.  Although we certainly do not condone the unjustified use of force by prison guards, Mr. DeWalt's allegations regarding Officer Smith's use of force against him fall short of what is required to state a claim for excessive force under the Eighth Amendment.  Accordingly, the district court did not err in dismissing Mr. DeWalt's excessive force claim.

*Id.* at 620.  In this case, the plaintiff's claims fall into the area between the two cases mentioned by the Seventh Circuit in *DeWalt*.[6]  Although, like Officer Smith in *DeWalt*, Terry shoved the plaintiff just once, and there was no further use of force, Terry accompanied the use of force with several statements to the plaintiff.  Also, the plaintiff was handcuffed and connected to other inmates at the time and certainly was not a physical threat.

Additionally, the plaintiff's injuries were more serious than those suffered by DeWalt, and the plaintiff avers that he continues to suffer pain.  "As the Supreme Court has said, pain, not injury,

---

[5] In *DeWalt*, Correctional Officer Smith issued a disciplinary report to the plaintiff and told the plaintiff that he was doing so because the plaintiff had filed a grievance against another officer and because correctional officers "stick together."  *DeWalt v. Carter*, 224 F.3d 607, 610 (7th Cir. 2000).  "As Mr. DeWalt walked away, he told Officer Smith that his actions were unprofessional, whereupon Officer Smith jumped up and shoved Mr. DeWalt toward the doorway and into the door frame.  Mr. DeWalt suffered bruising on his back where he hit the door frame; the prison medical staff, however, did not note any visible injury and did not order X-rays."  *Id.* at 610-11.

[6] Another district court in this Circuit has determined that summary judgment is inappropriate when use of force falls somewhere between the *de minimis* found in *Lunsford* and the excessive use of force found in *Thomas*.  *Jones-Bey v. Conley*, 144 F.Supp.2d 1035, 1042 (N.D. Ind. 2000) (citing *Roberts v. Samardvich*, 909 F.Supp. 594, 605 (N.D. Ind. 1995)).

11

is the barometer by which we measure claims of excessive force." *Lewis*, 581 F.3d at 475 (citing *Hudson*, 503 U.S. at 9). The plaintiff avers he suffered bruises and that the assault caused him "extreme pain and physical injuries to [his] arm, shoulder, and back." (Howard Aff., ¶28). Further, his "arm and shoulder healed completely but [his] back has remained injured and causes discomfort on an almost daily basis." *Id.* at ¶29. Based on this evidence, there is a material question of fact regarding whether the force used was *de minimis* or rises to the level of a constitutional violation. Accordingly, for the purpose of summary judgment, the court will assume that the force was more than *de minimis* and move on to the next step of the inquiry.

The focus of the inquiry then shifts from the act to the actor, away from the objective and to the subjective. *Lewis*, 581 F.3d at 476 (citing *Hudson*, 503 U.S. at 8). "What matters – and what will generally be the decisive factor in cases such as this – is the mindset of the individual applying the force." *Lewis*, 581 F.3d at 476. As the plaintiff argues, a reasonable jury could conclude that there was no need to touch the plaintiff in any way to restore order, where the plaintiff was simply talking when he shouldn't have been, and when he was handcuffed and linked with a belly chain to three other inmates. Because Terry does not admit that he touched the plaintiff, the court is unable to consider his motivations for doing so. Consequently, the court will deny the defendants' motion for summary judgment on this claim.

### 2. Failure to Act Claim Against Deputy McCormack

Officers who have a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's rights through the use of excessive force but fail to do so may be held liable under § 1983. *Fillmore v. Page*, 358 F.3d 496, 505-06 (7th Cir. 2004). It is well established that "'[a]n official satisfies that personal responsibility requirement of § 1983 if she acts or *fails* to act

12

with a deliberate or reckless disregard of the plaintiff's constitutional rights.'" *Id.* at 506 (quoting *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982)) (emphasis in original).

Deputy McCormack avers that he did not hear or observe an angry exchange between Terry and the plaintiff and that the plaintiff never complained to McCormack about being physically abused by Terry. As a result, the defendants argue that McCormack could not respond to something he did not see and he could not address something was not brought to his attention by the plaintiff.

In contrast, according to the plaintiff, McCormack witnessed the entire exchange between Terry and the plaintiff. The plaintiff insists that McCormack had a realistic opportunity to both physically and verbally intervene when he observed Terry leave his position at the rear of the group, walk up to the plaintiff's left side, grab the plaintiff's left arm, and slam the plaintiff's left shoulder into the wall.

The plaintiff's affidavit sets forth a very quick succession of events: the plaintiff talking, Terry approaching the plaintiff, grabbing the plaintiff's arm and slamming the plaintiff's shoulder into the wall; there was no subsequent force used against the plaintiff. Even if McCormack was watching while this occurred, there was no opportunity for him to stop Terry. The offending actions were complete before McCormack could speak or take action. Thus, the court will grant the defendants' motion for summary judgment regarding this claim.

### 3. Failure to Act Claim Against Sheriff Clarke

The plaintiff was also allowed to proceed on an Eighth Amendment claim against Sheriff Clarke. He stated in his complaint that Sheriff Clarke had specific knowledge of Terry's history of violence, but failed to act. Neither party directly addresses this claim in their summary judgment briefs.

Case 2:05-cv-00635-WEC   Filed 03/31/10   Page 13 of 27   Document 144

The plaintiff has presented evidence regarding a number of past incidents, both on duty and off-duty, involving Deputy Terry. There was a complaint that Terry drew his weapon and pointed it at a group of men with whom he had a confrontation in November 1993. He also had two other incidents in early 1994, when officers of the Milwaukee Police Department tried to issue Terry parking and traffic citations, one of which resulted in a citation for disorderly conduct. In June and July 1995, Terry had several violent encounters with another deputy he was dating that were investigated by the Sheriff's Department.

Written charges were filed against Terry regarding Terry's drawing of his service weapon at a tavern on May 3, 1996. Terry pointed the gun at another patron, and the weapon discharged during a subsequent fight. In that case, Terry reached a settlement agreement before the Milwaukee County Personnel Review Board.

Written charges against Terry also resulted from a motor vehicle accident on December 11, 1999. Initially, Terry left the scene of the accident and then reported his vehicle stolen to the Milwaukee Police Department. Two days later, Terry admitted "that he had been driving the vehicle when the accident occurred; that he failed to stop for same; and that he had lied about the auto theft." (Plaintiff's Exhibit GG). Terry subsequently denied his admission to the Milwaukee Police Department officer. The Milwaukee Police Department charged Terry with Failure to do Duty upon Striking Attended Vehicle and Obstructing an Officer. The case was also referred to the Milwaukee County District Attorney's Office.

In addition to the above, the plaintiff has presented evidence of four complaints made by inmates that Terry used excessive force. The events underlying a 1994 complaint by inmate Jose Cruz and a 1998 complaint by inmate Crystal James occurred before defendant Clarke was Milwaukee County Sheriff. However, they were part of the Milwaukee County Sheriff's Department

records, and Clarke may have had notice of the incidents. Additionally, the last two excessive force complaints against Terry were made after Sheriff Clark was in office. An Assistant District Attorney reported a July 13, 2004, incident in court in which Terry had to "peel apart the defendant's fingers in order to get out the paperwork" after asking the defendant for the papers three times and the defendant refusing three times. (Plaintiff's Exhibit HH). The Sheriff's Office Internal Affairs Division determined that this did not "rise to the level of either a criminal act nor a department rule violation." *Id.*

The most recent complaint arose from a January 5, 2005 encounter between Terry and inmate Brent Alexander. "Mr. Alexander stated that he was handcuffed from behind when Deputy Terry punched him in the face with a closed right fist" while Terry was escorting Mr. Alexander to the freight elevator in the Courthouse. (Plaintiff's Exhibit II). Terry's version of the events was that Mr. Alexander began pulling away from Terry and yelled an obscenity when they reached the elevator and, as a result, Terry "stabilized Mr. Alexander against the elevator wall." *Id.* The investigation into this incident could not proceed because Mr. Alexander failed to cooperate with the detectives.

Although the plaintiff was allowed to proceed on this claim at the screening stage, Sheriff Clarke has not sought summary judgment on this claim. Indeed, Sheriff Clarke has not submitted any affidavits or exhibits setting forth his position on this claim, or describing the personal knowledge he had, if any, of Terry's history. As a result, the court has no alternative but to allow this claim to proceed. Of course, how far this claim will proceed remains to be seen. In this regard, the court notes that there is no *respondeat superior* liability under § 1983 for the unconstitutional conduct of subordinates. *Ashcroft v. Iqbal*, __U.S. __, 129 S. Ct. 1937, 1948 (2009). To prevail on this claim, the plaintiff will have to show, among other things, that defendant Clarke had personal knowledge of Terry's history and that Clarke's own actions or failure to act, based on that personal

knowledge, constituted a "deliberate or reckless disregard of the plaintiff's constitutional rights. *See Fillmore*, 358 F.3d at 506.

## B.    Intentional Infliction of Emotional Distress[7]

The defendants contend that the plaintiff cannot establish a single prong of the test for proving intentional infliction of emotional distress.   In response, the plaintiff argues that Terry's conduct was intended to hurt and humiliate the plaintiff.

> Wisconsin recognizes a claim for intentional infliction of emotional distress.  *Alsteen v. Gehl*, 21 Wis. 2d 349, 124 N.W.2d 312 (1963). As this court noted in *Alsteen*, evidentiary problems of proof were at the root of the common law's hesitance to compensate emotional harm in the absence of physical injury.  *Alsteen*, 21 Wis.2d at 358, 124 N.W.2d 312.   The elements of the tort of intentional infliction of emotional distress set forth in *Alsteen* were devised in part to guarantee the authenticity of the plaintiff's claim.   To recover, the plaintiff would have to prove that the defendant intended to cause emotional distress and did cause severe emotional distress.   Perhaps more important, the plaintiff would have to prove that the defendants' conduct would be judged extreme or outrageous by an "average member of the community."  *Alsteen*, 21 Wis.2d at 359, 124 N.W.2d 312.  "If the conduct is gross and extreme it is more probable that the plaintiff did, in fact, suffer the emotional distress alleged."  *Alsteen*, 21 Wis.2d at 360, 124 N.W.2d 312.

*Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis. 2d 627, 638-39, 517 N.W.2d 432 (Wis. 1994).

The plaintiff avers that, because of the assault, he "experienced mental and emotional anguish, including insomnia, heightened anxiety attacks, and depression.  A psychiatrist prescribed wellbutrin, paxil, and benedryl to treat these symptoms." (Howard Aff., ¶35).  He also submits that, since this incident, his depression has caused him to gain sixty pounds.  *Id.* at ¶36.  The plaintiff

---

[7]   The defendants generally contend that they are entitled to summary judgment because the plaintiff failed to comply with the notice requirements of Wis. Stat. § 893.80.  However, because the notice of claim requirements apply only to state law claims, this would be the only one of the plaintiff's claims to which the defendants' notice of claim argument could apply.  Although the defendants suggested that the plaintiff failed to provide the necessary notice to the Milwaukee County Clerk, the plaintiff provided documentation of the notice of claim he filed in October 2004.  (Plaintiff's Exhibit Q).  At the very least, there is a genuine question of material fact regarding whether the plaintiff filed an appropriate notice of claim.  Accordingly, the court will consider this claim on the merits.

further avers that he is "subjected to constant ridicule, taunting, disrespectful, and threatening comments," and he has experienced repeated theft of his property and food items. *Id.* at ¶37. The plaintiff has become a target for inmates who wanted to show others they were tough by "punking" him out. *Id.* at ¶38. He lives in a constant state of fear and apprehension about when the next incident will occur. *Id.* The plaintiff no longer attempts to have friends or tries to talk to anybody to avoid the humiliation of someone telling them not to talk to the plaintiff because he let a C.O. "punk" him. *Id.* at ¶¶39-40.

The plaintiff has presented evidence that he suffers emotional distress; he also has created an arguable connection between his emotional distress and the incident with Deputy Terry. Nevertheless, there is no evidence that the defendant intended to cause emotional distress to the plaintiff. Terry advised the plaintiff that there was no talking in the courthouse hallways, and the plaintiff talked to another inmate anyway. Even resolving inferences in the plaintiff's favor, a reasonable person could not conclude that Terry's actions were intended to cause emotional distress to the plaintiff, rather than simply that Terry wanted the plaintiff to remain silent and follow his directions. This conclusion is supported by the plaintiff's averment that Terry said, "what part of don't talk do you not understand?" as he slammed the plaintiff's left shoulder against the wall. (Howard Aff., ¶8). Any emotional distress was a byproduct of Terry's effort to discipline the plaintiff.

Moreover, it is not apparent that Terry's conduct would necessarily be judged extreme or outrageous by an average member of the community. This is not the type of activity that rises to the level of intentional infliction of emotional distress. *See McKissick v. Schroeder*, 235 N.W.2d 686, 690 (Wis. 1975) (police officers exhibited extreme and outrageous behavior when they entered plaintiff's house after fatally shooting her son, refused to assist her in calling for aid, and then

marched her into the kitchen with her hands up, questioning her at length while her son was dying); *see also Rabideau v. City of Racine*, 243 Wis.2d 486, 502-03, 627 N.W.2d 795 (Wis. 2001) (Even where city police officer shot and killed a dog with the owner present, summary judgment upheld because there was no evidence that the officer did so to cause emotional distress to the owner.). The court will grant the defendants' motion for summary judgment regarding this claim.

## C.    Retaliation

The defendants assert that there is no evidence that the plaintiff was the target of any improper conduct on the part of staff at the Milwaukee County Sheriff's Office. Further, defendants Deputy Brandon Rios and Deputy Ramone Agor, who participated in the shakedown on September 4, 2004, aver that they did not damage any of the plaintiff's property. The plaintiff contends that there is a genuine issue of material fact as to whether the defendants destroyed the plaintiff's legal materials and fabricated a rule violation; the plaintiff avers that he did not have the matches the defendants say they found in his cell. The plaintiff submits that placing his toothbrush in the toilet, fabricating a rule violation, and giving him a 23-hour room confinement were all done in retaliation for the plaintiff filing grievances on July 28, 2004, and September 3, 2004.

To prove retaliation, the plaintiff must show that a protected activity (in this case filing a grievance) was "at least a motivating factor" in any retaliatory action taken by the prison. *See Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). If he can show that retaliatory animus was a factor, then the burden shifts to the defendants to prove that the same actions would have occurred in the absence of the protected conduct. *Spiegla v. Hull*, 471 F.3d 928, 943 (7th Cir. 2004) (citing *Mt. Healthy Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The plaintiff's evidence that Milwaukee County Sheriff's Department officials were motivated by his grievances is weak. He speculates that his punishment was based on retaliation

because of the timing of the shakedown and Thelaner's comment to the plaintiff about filing another grievance if he is unhappy with the punishment he received. He also maintains that he did not have matches in his cell and speculates that they were planted there and/or that a defendant lied about finding the matches in the plaintiff's cell. However, mere speculation is not sufficient to stave off summary judgment. *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 544 F.3d 752, 757 (7th Cir. 2008). Moreover, "mere temporal proximity is not enough to establish a genuine issue of material fact." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008) (internal quotation omitted).

Even if the plaintiff had shown that the officials were motivated by a retaliatory purpose, the defendants amply demonstrate that they would have taken the same actions even if the plaintiff never filed his grievances. The search of the pod was based on another inmate's possession of ball point pens. The plaintiff just happened to be housed in that unit and, as a result, was subject to the shakedown.

In support of his contention that he did not have matches in his cell, the plaintiff cites to the defendants' discovery responses. (Plaintiff's Exhibit N). He implies that because none of the defendants remember finding the matches in his cell or witnessing someone else find them, that they were not found. However, the plaintiff's assertion is belied by another exhibit he presented, the incident report regarding the shakedown. (Plaintiff's Exhibit H). The report, which documents that matches were found in the plaintiff's cell, was prepared much closer in time to the incident than the discovery responses and is likely to be more reliable than a speculative inference from a lack of memory.

The evidence the plaintiff presented would not be sufficient to support a verdict in the plaintiff's favor. The plaintiff cannot point to which of the deputies who participated in the search

of his cell might have planted the matches there and/or pretended to find them.  Nor can the plaintiff

show that the deputies, other than Thelaner, knew about his grievances.  A jury would have to pile

speculation upon speculation in order to conclude that one of the defendants planted the matches

and/or lied about finding them in the plaintiff's cell, that the defendant or defendants knew about the

plaintiff's grievances and that the plaintiff's grievances motivated the decision to say the matches

were found in the plaintiff's cell and discipline the plaintiff for possession of contraband.  A

reasonable jury could not come to such a conclusion.  *Davis v. Carter*, 452 F.3d 686, 697 (7th Cir.

2006) ("[W]hen the evidence provides for only speculation or guessing, summary judgment is

appropriate.").  The court will grant summary judgment in favor of the defendants on this claim.

### D.  Equal Protection - "Class of One"

To comply with equal protection, governmental entities are generally required to treat all

similarly situated persons in a similar manner.  *City of Cleburne, Texas v. Cleburne Living Center*,

473 U.S. 432, 439 (1985).  As the court noted in the screening order, the plaintiff's equal protection

claim is properly characterized as a "class of one" claim.  "Class of one" equal protection claims arise

without regard to protected-class status where the plaintiff "has been intentionally treated differently

from others similarly situated and . . . there is no rational basis for the difference in treatment."

*Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  In the Seventh Circuit, "class of one"

claims under § 1983 require the plaintiff to "present evidence that the defendant deliberately sought

to deprive him of the equal protection of the law for reasons of a personal nature unrelated to the

duties of the defendant's position."  *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000).

The plaintiff must show that "the cause of the differential treatment of which the plaintiff complains

was a totally illegitimate animus toward the plaintiff by the defendants."  *Id.*  "If a merely

unexplained difference in police treatment of similar complaints made by different people established

a prima face case of denial of equal protection of the laws, the federal courts would be drawn deep into the local enforcement of petty state and local laws." *Id.*

With regard to this claim, the defendants argue that the plaintiff presents no evidence that his complaint against Terry was handled any differently than any similar complaint, that the plaintiff was one of several inmates whose cells were the subject of the September 4, 2004, shakedown, and that there is no evidence that this investigation was covered up or falsified in any manner.

The plaintiff argues that defendant Strachota treated the plaintiff differently from others similarly situated, with no rational basis for the difference in treatment.[8] The plaintiff maintains that Strachota's motive for conducting a second investigation and re-interviewing Royster was to discredit the assault allegation. The plaintiff believes that Strachota did not follow a Sheriff's Office directive regarding the handling of complaints against Milwaukee Sheriff's Office personnel in his case, while he did in the case of a similar complaint in 2005, and that the difference shows that he failed to treat the plaintiff the same as other victims of assault. (Plaintiff's Exhibit Y).

It is difficult to tell from the documents in the record whether the directive was followed in either case. The plaintiff has presented the Investigative Summary regarding the Internal Affairs Division investigation of his claim in July 2004 (Plaintiff's Exhibit V), as well as the Investigative Summary regarding the Internal Affairs Division investigation of a claim made in January 2005 by Brent Alexander (Plaintiff's Exhibit II). Both the plaintiff and Mr. Alexander alleged an assault by Terry while Terry was transporting them as inmates through the Milwaukee County Courthouse. They were each handcuffed from behind at the time of their assault.

---

[8] At screening, the plaintiff was allowed to proceed on a "class of one" equal protection claim against defendants Terry, Strachota, and Clarke because he alleged that they covered up the assault instead of treating him as a victim and prosecuting the crime. The plaintiff references only Strachota in his arguments regarding this claim; he does not seem to be pursuing this claim against Terry or Clarke. Additionally, it does not appear that either Terry or Clarke were personally involved in the investigation of the assault. Accordingly, the court will consider the plaintiff's "class of one" equal protection claim to be only against Strachota.

21

Even if the court were to assume that the plaintiff and Mr. Alexander were similarly situated, it is not clear that the plaintiff's claim was treated differently than Mr. Alexander's claim. In the plaintiff's case, the summary concludes with the determination that the plaintiff's allegations against Terry were "unfounded." With regard to Mr. Alexander's claim, the matter was closed due to the lack of interest Mr. Alexander displayed in participating with the investigation.

The plaintiff also cites to a decision in a lawsuit filed by a former Sheriff's deputy who was terminated as a result of an investigation by Strachota. This deputy is certainly not similarly situated to the plaintiff and, consequently, the facts of that case are not relevant here.

In any event, the plaintiff has presented no evidence that Strachota "deliberately sought to deprive him of the equal protection of the law for reasons of a personal nature unrelated to the duties of the defendant's position." *Hilton*, 209 F.3d at 1008. The plaintiff does not suggest that he ever met Strachota, before or after this incident, or that Strachota would have any reason for disliking the plaintiff. Rather, the plaintiff has presented two investigative summaries related to Internal Affairs Division investigations of complaints of excessive force against Terry by inmates; from the information contained in the documents, it seems that the complaints were handled similarly. The court will grant the defendants' motion for summary judgment on this claim.

**E.     Policy Claims**

The plaintiff was allowed to proceed on claims that defendants Clarke and Milwaukee County maintain unconstitutional policies of: (1) cutting the number of deputies that are assigned to the Milwaukee County Jail and the Milwaukee County Courthouse; (2) not properly logging and even destroying grievances that inmates file against deputies; (3) covering up allegations of misconduct; and (4) retaliating against prisoners who filed complaints against the Milwaukee County Sheriff's Department or its personnel.

A local governing body may be liable for monetary damages under § 1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority. *Monell*, 436 U.S. at 690, 98 S. Ct. 2018; *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 674 (7th Cir. 2009). To demonstrate that the County is liable for a harmful custom or practice, the plaintiff must show that County policymakers were "deliberately indifferent as to [the] known or obvious consequences." *Gable v. City of Chi.*, 296 F.3d 531, 537 (7th Cir. 2002). In other words, they must have been aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff. *Id.* Therefore, in situations where rules or regulations are required to remedy a potentially dangerous practice, the County's failure to make a policy is also actionable. *See Sims v. Mulcahy*, 902 F.2d 524, 543 (7th Cir. 1990) (quoting *Jones v. City of Chi.*, 787 F.2d 200, 204-05 (7th Cir. 1986)).

We do not adopt any bright-line rules defining a "widespread custom or practice." As we stated in *Cosby v. Ward*, there is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability,"except that it must be more than one instance," 843 F.2d 967, 983 (7th Cir. 1988), or even three, *Gable*, 296 F.3d at 538. ("[T]hree incidents where vehicle owners were erroneously told that their vehicles were not at Lot 6 do not amount to a persistent and widespread practice.") (internal quotation marks omitted). But the plaintiff must demonstrate that there is a policy at issue rather than a random event. This may take the form of an implicit policy or a gap in expressed policies. *Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006) (citing *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005)), or "a series of violations to lay the premise of deliberate indifference." *Palmer*, 327 F.3d at 596 (citation omitted). Beyond these threshold requirements, the jury must make a factual determination: whether the evidence demonstrates that the County had a widespread practice that caused the alleged constitutional harm. *See Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 928 (7th Cir. 2004).

*Thomas v. Cook County Sheriff's Department*, 588 F.3d 445, 453-54 (7th Cir. 2009).

In their brief in support of their motion for summary judgment, the defendants summarily argue: "Finally, he offers no evidence that the Milwaukee County Sheriff's Office or any of the

defendants executed unconstitutional policies." (Brief in Support of Defendants' Motion for Summary Judgment, p. 7). There is no other mention of the plaintiff's policy claims.

In his brief in opposition to the defendants' motion for summary judgment, the plaintiff presents evidence regarding three of his proposed policy claims.[9] The defendants failed to reply to the substance of the plaintiff's arguments regarding his policy claims; in fact, they simply cut and pasted their original argument into their reply brief, without acknowledging the plaintiff's arguments or evidence.

The plaintiff asserts that defendants Clarke and Milwaukee County have allowed a policy of inadequate staffing that rises to the level of deliberate indifference to the safety and security of its staff, the public, and the plaintiff. He cites an audit prepared by the National Center for State Courts that found there should be a minimum of 114 deputies assigned to the courthouse and determined that the 2006 level of 78 deputies was inadequate and based on budgetary considerations without sufficient regard to the security and safety of the court and all those who must visit the courthouse. On July 28, 2004, there were 68 deputies working at the Courthouse. The plaintiff also cites Wisconsin statutes that require Clarke and the County "to provide the necessary deputy sheriffs as attending officers." Wis. Stat. § 59.27(3) and S.C.R. 70.39(5)(a). Ultimately, the plaintiff argues that Terry's conduct was foreseeable because individuals placed in a dangerous job situation with only a fraction of the deputies needed to maintain safety will engage in verbal and physical abuse of inmates in an attempt to intimidate them to compensate for their lack of numbers. However, it does not reasonably follow that understaffing will lead to guards being violent towards inmates. Moreover, there is no evidence that Terry's alleged conduct was reasonably caused by understaffing;

---

[9] Because the plaintiff chose not to address his original claim that defendants Clarke and Milwaukee County maintain an unconstitutional policy of covering up allegations of misconduct, the court will consider the claim waived and address the plaintiff's other three policy claims.

nor is it suggested that having more than two deputies escorting the group of four inmates would have prevented Terry's conduct on July 28, 2004. The court will grant summary judgment for the defendants on this claim because a reasonable jury could not conclude that Terry's actions toward the plaintiff related to or resulted from understaffing at the courthouse.

The plaintiff also asserts that Clarke and Milwaukee County have an unconstitutional policy of not properly logging and filing inmate grievances against deputies. As evidence, the plaintiff refers to the lack of response he received to his grievances. He also cites logs from September 3 and 4, 2004 that do not reference grievances he filed and the inability of the Sheriff's department to find the grievances he filed in 2004 in response to an open records request the plaintiff filed in January 2005. The plaintiff is correct that a jury could conclude that the defendants improperly handled inmate grievances. However, the plaintiff has not presented evidence that his constitutional rights were violated as a result of this policy. "Municipal liability under § 1983 is appropriate only when the policy in question is the direct cause or moving force behind a constitutional violation." *Hunter v. Amin*, 583 F.3d 486 (7th Cir. 2009) (internal citations and quotations omitted).

Finally, the plaintiff presents evidence in support of his argument that Clarke and Milwaukee County have a policy or custom of retaliating against persons who exercise their First Amendment rights. He argues that it is impossible to track the number of times that inmates have complained about retaliation due to the defendants' custom of destroying complaints. Nevertheless, the plaintiff cites a lawsuit filed by inmate Allen Davis. The plaintiff also cites several retaliation claims made by deputies who exercised their First Amendment rights. It is unclear whether the information presented by the plaintiff is enough to show a pattern or custom. Nevertheless, because the court is granting the defendants' motion for summary judgment regarding the plaintiff's retaliation claim, it

logically follows that the plaintiff has not shown a violation of his constitutional rights stemming from this policy, even if he were able to establish that the policy or custom exists.

## IV. COUNSEL

In a decision and order dated October 21, 2009, the court denied without prejudice the plaintiff's motion to appoint counsel. The plaintiff filed a motion for reconsideration of that decision, which the court denied in a decision and order dated November 10, 2009. At that time, the court acknowledged that the plaintiff had satisfied the threshold burden of attempting to secure private counsel on his own. *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007); *Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir. 1995). Nevertheless, the court concluded that the plaintiff appeared competent to try the case himself. *See Pruitt*, 503 F.3d at 654-655 (citing *Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir. 1993)).

Upon review of the claims remaining after the defendants' motion for summary judgment, the court believes that it would be beneficial for the plaintiff to have counsel going forward. Accordingly, the court will recruit *pro bono* counsel to assist the plaintiff as this case proceeds. Once the court has found counsel willing to represent the plaintiff, and the plaintiff has agreed to the Regulations Governing the Prepayment and Reimbursement of Expenses in Pro Bono Cases From the District Court Pro Bono Fund, this case will be set for a scheduling conference**.**

## V. ORDER

**NOW THEREFORE IT IS ORDERED** that the defendants' motion for summary judgment (Docket #110) be and hereby is **GRANTED IN PART AND DENIED IN PART,** as provided herein; specifically, the plaintiff's excessive force claim against defendant Terry and the plaintiff's failure to act claim against defendant Clarke have survived the defendants' motion for summary judgment and will be allowed to proceed; and

**IT IS FURTHER ORDERED** that the following individuals be and hereby are **DISMISSED** as defendants to this action: T.J. MacCormick, Brian Thelaner, Carol Curfman, Todd Dickau, Jeffrey Demeyers, Aaron Heine, Ramon Agor, Dean Zirzow, Brandon S. Rios, Andrew Wendt, Christopher Kontowicz, Jason Vanderwerff, Eric Sturino, Bradley Summers, Mark Strachota, and Milwaukee County.

Dated at Milwaukee, Wisconsin this 31st day of March, 2010.

BY THE COURT:

s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge